FRANK MILLER, RESPONDENT, v. ST. JOSEPH TRANSFER COMPANY, AP-
PELLANT.

Kansas City Court of Appeals. April 7, 1930.

*Stringfellow & Garvey* for appellant.

*Randolph & Randolph* for respondent.

BARNETT, C.—This is an appeal from a judgment of the circuit court of Buchanan County reversing an order of the Workmen's Compensation whereby they refused to award compensation to the respondent. When the plaintiff testified before the commission he was first examined by Commissioner Shaw. He claimed that he got an injury while working for the appellant in the latter part of January, 1928; that he did not remember the exact date nor the exact time of day, but that he received the accident "stacking furnaces;" that by pushing and stacking the furnaces he received a bruise on his hand; that after noticing the bruise he worked for about two weeks and then became sick. On direct examination he testified that he helped to unload and stack about four or five carloads of furnaces; that several men were engaged in the work, and he estimated that there were about two hundred furnaces in each carload. He was asked to describe how he stacked the furnaces. He answered as follows:

"A. We were putting crates down here (illustrating), then we come on up (illustrating), come on up (illustrating), we stacked them seven crates high, and then lined them up and I then put my hand under them and shoved them up."

"Q. On what part of the crate or furnaces did you put your hand? A. On the bottom and sometimes on the corner."

He testified that he did not notice anything wrong with his hand until the last two carloads of furnaces were unloaded, "about the finishing up." He said that when he first noticed there was something wrong with his hand it seemed to be sore in the palm; that there was a little black spot in the palm of his hand and it looked like it might have been caused by a splinter. At another time he said that the place in his hand was a lump with a little black spot in it and that it was caused by "pushing on the furnaces and the constant bruising of it."

"Q. Was it on the first or second carload that you caught it on? A. I bruised my hand on the second carload.

"Q. What caused that? A. The constant pushing and stacking up of the furnaces."

After the plaintiff had worked about two weeks he became sick and Dr. C. H. Werner was called to attend him. Dr. Werner discovered that plaintiff was suffering from smallpox. At this time plaintiff complained that his hand was sore. Dr. Werner examined the hand and ascertained that plaintiff was suffering with Palmar abscess, which he testified was not caused by smallpox. The plaintiff's hand was lanced several times and he suffered disability on account thereof. Dr. Werner was asked the following questions and made the following answers:

"Q. Now, assuming, Doctor, that this man, along the latter part of December, and towards the first of January, engaged in the occupation of taking freighted furnaces out of cars and stacking them up in the warehouse of the Saint Joseph Transfer & Storage Company, about seven furnaces high, and that these furnaces were heavy, requiring from two to four men to lift them up and stacking them, and in the process of stacking, it was necessary to line them up and get them even, and sometimes he would take a hold of the crates and sometimes he would take the corner of the crates by the palm of the hand to push them up; assuming that he did that for a period of two or three days, unloading, perhaps from one hundred to two hundred crates in each carload, would the constant pushing, using the palm of the hand, would that possibly cause a bruise or infection there? A. Yes, sir, it could.

"Q. What do you suppose caused that infection? A. Either a bruised condition or perhaps a splinter."

The commission found that the plaintiff suffered from "an occupational disease and not an accident."

## OPINION.

Section 4 of the Workmen's Compensation Act provides that upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. Therefore, if there is any evidence to support the finding of the commission it may not be disturbed upon appeal. Section 3 of the act provides that the employer shall be liable irrespective of negligence to furnish compensation under the provisions of the act for personal injuries or death of the employee *by accident* arising out of and in the course of his employment. Section 7 provides as follows:

"The word 'accident' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the

body and such disease or infection as naturally results therefrom. The said terms shall in no case be constructed to include occupational disease in any form," etc.

Many cases are cited in the briefs wherein the term "accident" has been defined by courts of other States. They are not controlling because our Statute defines the term. We are not even at liberty to follow the decisions of our own courts wherein the term "accident" was defined, but wherein the Workmen's Compensation Act was not involved. The commission made two findings of fact, namely; (1) that plaintiff suffered an occupational disease, (2) that he had not suffered an accident. If there is any evidence to support either of these findings the action of the commission must be sustained. The authorities are not in accord as to what constitutes an occupational disease. In L. R. A., 1916A, page 289, the editor says:

"The diseases suffered independently of any accident may be divided roughly into two classes, (1) the so-called industrial or occupational diseases which are naturally and reasonably to be anticipated as the result of a workman's following a certain occupation for a considerable period of time, as for example, lead poison; (2) diseases which are the result of some unusual condition of the employment, as for example, pneumonia following an enforced exposure."

The authorities that we have seen are unanimous in holding that those diseases which are the natural and reasonably to be anticipated results of a workman's following a certain occupation are occupational diseases. They are not unanimous on the question as to whether or not a disease which results from an unusual or temporary condition of the employment is an occupational disease. We do not decide the question because we are convinced that there was evidence that the plaintiff in this case did not suffer disability from personal injury by accident within the meaning the Missouri Statute. The Workmen's Compensation Act of Minnesota provides that the word "accident" as used in the phrases "personal injuries due to accident" and "injuries or death caused by accident" shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault and producing at the time, injury to the physical structure of the body. In the case of Young v. Melrose Granite Co., 189 N. W. 426, a stone cutter made claim for compensation. The evidence showed that he operated a stone surfacing machine and that he became disabled because his muscles and nerves, through a too long continuation at a task that was too heavy for him, became atrophied and degenerated. The court said:

"If any effect at all could come to the operater of this machine it must be attributed to wearying the muscles from a too long continuance at a heavy work. It could not come at any particular movement of time, but only as the work was continued until the exhaustion became too great for the ordinary recuperative force. . . . . It seems clear to us that this theory of the doctor does not bring the case within the Compensation Act. Nothing happened suddenly or violently to plaintiff or any part of his anatomy. He locates no particular moment in the day and a quarter of his employment when any bodily injury or pain was experienced. Nothing happened to the machine out of the ordinary. The arm of these machines often drops, due to the vibrations and the lifting power of the compressed air releasing the 'dog.' The Compensation Act was not designed to cover cases where injuries result from ordinary overwork or too long continued effort without any sudden or violent rupture or collapse of some physical structure or function of the body."

The Nebraska Workmen's Compensation Act contains the provisions which we have quoted from the Missouri Statutes. In the case of Blair v. Omaha Ice & Cold Storage Co., 165 N. W. 893, the evidence showed that the plaintiff was an ice puller. He was ordered to change his work so that he was at first exposed to a very low temperature and then to a high temperature. After he was engaged in such work about a week he contracted sciatic rheumatism. The court said that there was no event which happened suddenly or violently which produced at the time objective symptoms of an injury; whereas, the statute provided that the terms "injury" and "personal injuries" should mean only violence to the physical structure of the body; that there was no violence to the physical structure of the body. The court calls attention to the fact that the Nebraska Statute is different from that of a number of other States, and that in practically every case in which the workman was held entitled to recover which was at all similar to the case before the court, the facts disclosed a sudden event happening at a particular time to which the injury was directly traceable.

The question as to whether or not there was any evidence from which the commission could have found that the plaintiff suffered an unexpected and unforeseen event happening suddenly and violently and producing at the time objective symptoms of injury, that is, violence to the physical structure of the body, is not before us. We may only determine whether there was any evidence from which the commission had the right to make a finding to the contrary. We think there was. The evidence clearly showed that an objective symptom appeared upon the plaintiff's hand, but there was evidence from which the commission had a right to find that this objective symptom was not produced from any event which happened suddenly

and violently. The commission might well have found that the black spot or lump in the palm of the plaintiff's hand was caused by constant pressure and consequent irritation, or from a splinter, rather than from any particular sudden impact of the hand with a furnace or crate.

In Guillod v. Kansas City Power & Light Co., 18 S. W. (2d) 97, this court held that a workman might recover under the Compensation Act for hernia caused by lifting a coil of wire in the usual and ordinary way. The St. Louis Court of Appeals arrived at a similar conclusion in the case of Drecksmith v. Universal Carloading & Distributing Co., 18 S. W. (2d) 86. In each case the first symptom of the injury was a sudden pain. In the case decided by this court the workman became nauseated following the pain. We held that the section of the Compensation Act which defines accident was taken from the Nebraska Statute and that when this State adopted that statute, it adopted the construction thereof by the Nebraska courts. The Supreme Court of Nebraska had held that objective symptoms of an injury include not only those symptoms that can be seen or ascertained by touch, but that symptoms of pain and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptom indicating a deleterious change in the bodily condition may constitute objective symptoms required by the statute defining accident.

We think that our former decision was right in adopting the Nebraska construction of the statute: yet the Supreme Court of Nebraska, as above stated, has held that the event must happen at a particular time, and must happen suddenly or violently. In the case before us the commission was justified in finding that the lump in the plaintiff's hand, and the soreness which subsequently developed, did not appear suddenly or violently. There is no conflict between our holding here and what was held in the case of Guillod v. Kansas City Power & Light Company, supra. Both adopt the construction of the statute by the Supreme Court of Nebraska. The judgment of the trial court should be reversed. The commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of BARNETT, C., is adopted by the court. The judgment of the trial court is reversed. *Bland,* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.