WILLIAM T. URIE, Appellant, v. GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY.—No. 38629.—176 S. W. (2d) 471.

Division One, December 6, 1943.

Rehearing Denied, January 3, 1944.

212.

*Trusty & Pugh* and *W. M. Anderson* for appellant; *Louis N. Wolf* on brief.

*Thomas J. Cole, L. J. Bishop, D. C. Chastain* and *Patterson, Chastain & Smith* for respondent.

214

■■■■ BRADLEY, C.—Action to recover $30,000 damages alleged to have been caused by the disease of silicosis. The trial court sustained a demurrer to the petition and plaintiff appealed.

The petition alleges: That at all times mentioned the plaintiff, the trustee, and the railroad company were engaged in interstate commerce in the operation of interstate trains; that prior to March 31, 1933, the railroad was operated by the Missouri Pacific Railroad Company and that plaintiff worked for said company as a locomotive fireman; that since said date the railroad has been operated by a trustee or trustees; that plaintiff has worked for the railroad company and the trustee for 30 years, during which time his run was between Joplin and Kansas City on interstate trains; that plaintiff first discovered his "injury and physical condition in May, 1940."

■■■■ The petition further alleges that through the negligence of defendant, plaintiff became afflicted with bilateral silicosis, and that as a direct result thereof he has been totally incapacitated from carrying on his duties for the railroad since May, 1940; that said conditions were the direct result of the negligence of defendant, as follows:

"(1) Defendant failed to keep the locomotive and appurtenance thereof upon which plaintiff was required to work in a proper and safe condition to operate in the services to which they were put without unnecessary peril to life and limb in that the defendant used in the sanding device used on said locomotives to put sand on the rails a sand material containing a very high percentage, or quantity, of silica or silica dioxide, to wit, ranging about 80 to 90 per cent and often said sanders were so that when they were set in operation to put sand under the wheels and to stop or slacken the speed or to enable said engines to pull sufficiently, excessive and unnecessary quantities of such material would frequently come from the sanding devices on to the rails and such material when used would be ground to dust by the wheels and brakes of said locomotives and dust containing such usual and unusual quantity of silicon dioxide would come from such use and into the locomotives where plaintiff worked and frequently of unusual quantity and such quantity would be breathed by him and defendant knew, or by the exercise of due care should have known that such sand material so used contained such very high percentage of silica or silicon dioxide and that the dust would form and frequently of excessive quantity because of said sanders, and come into the cab and be breathed and that over a period of time such breathing of such

dust was dangerous to the health and life and would likely cause to the plaintiff the condition resulting to the plaintiff.

"(2) Defendant negligently failed to furnish plaintiff a reasonably safe place in which to work in that the locomotives on which plaintiff was required to work as fireman were supplied with sand for the sanders thereof which contained a very high percentage of silica or silicon dioxide as above, and defendant knew. such fact and still defendant used same and used said engines under the conditions above described.

"(3) Although the defendant was using sandy substance containing such quantity of silica, and using said locomotives that would cause and allow large quantities of silica dust containing silica to be created and come into the cab and be inhaled, yet defendant negligently failed to warn the plaintiff and negligently failed to furnish him with a respirator or device to prevent the inhalation of said silica dust.

"Plaintiff further alleges that the sanding devices on said engines were all of the usual and customary type and used for the usual and customary purpose and if ordinary care was exercised in keeping them adjusted such large quantities of such sandy silica material would not escape; that plaintiff does not know whether the same kind of sand containing such high quality of silica was used by other railroads; . . . that such sanding devices operated in the same manner and by the same means as devices on locomotives of other railroads, and if kept in normal and regular working condition would not allow such large quantities of silica dust to form as above stated.

"Plaintiff further states that the negligent acts and omissions of said defendant operated severally or concurrently in causing him to become injured and afflicted with such bilateral silicosis and caused his health and strength to be weakened and. impaired, and to render him physically unable to carry on his work, and that he is permanently injured and his earning power is destroyed."

The demurrer alleged (1) that the petition "does not state facts sufficient to constitute a cause of action against the defendant", and (2) that the "petition shows the cause of action, if any, . . . did not arise or accrue within three years prior to the institution of this action, and the same is barred."

■ Defendant, respondent here, makes the point that the appeal should be dismissed, and, we first dispose of that question. It is contended that "no proper affidavit for appeal" was filed. Sec. 1184 R. S. 1939, Mo. R. S. A., Sec. 1184, provides that "any party to a suit aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal . . . from any final judgment in the case." Sec. 1186 R. S. 1939, Mo. R. S. A., Sec. 1186, provides that "no such appeal shall be allowed unless . . . the appellant or his agent shall, during the

same term, (of the judgment) file in the court his affidavit'', etc.

All orders and steps concerned were at the January, 1943, term of the court. The demurrer to the petition was sustained January 28. February 11, defendant filed affidavit for appeal. March 13, the court, at plaintiff's suggestion, made the following order:

''The court finds that the record and judgment made in this cause under date of January 28, 1943, the same being during the January term, 1943, of this court, should be set aside and for naught held, and the court, upon its own motion, does hereby set said record, judgment and decree aside. The court doth now order, adjudge and decree that the record be that the court doth now take up defendant's demurrer to plaintiff's second amended petition and does sustain said demurrer. Plaintiff refuses to plead further. Whereupon, the court dismisses plaintiff's petition and enters judgment for defendant and against plaintiff for costs, and that he have execution therefor.''

Immediately following the above order, plaintiff ''refiled application and affidavit for an appeal'', and the appeal was granted.

In the brief defendant says: ''It will be noted that the abstract does not show, nor will the transcript on file in this court show, that any final judgment was rendered on February 11, 1943. The judgment sought to be appealed from in this case is the judgment entered on March 13, 1943. . . . The affidavit (for appeal) of February 11th could not have been directed to the final judgment which was entered in this case on March 13th.''

An appeal will not be dismissed because the affidavit therefor was sworn to *before* the judgment was rendered where the trial court's attention was not called to the defect. State ex rel. Title Guaranty & Trust Co. v. Broaddus et al., 210 Mo. 1, 108 S. W. 544; Marshall v. Shoemaker's Estate, 164 Mo. App. 429, 144 S. W. 1120. There is no claim that the trial court's attention was called to the defect complained of, hence we rule that the point on dismissing the appeal is not well taken.

Plaintiff claims that the petition states a cause of action for negligence under the Federal Employers Liability Act, 45 U. S. C. A., Sec. 51-60, and plaintiff contends that the facts alleged will support recovery for breach of the Boiler Inspection Act, 45 U. S. C. A., Sec. 23. Defendant, in effect, says that the petition fails to state facts sufficient to support recovery under either theory, and that if it does, whatever cause is stated is barred by limitations.

██ Does the petition state a cause of action, for negligence, under the Federal Employers Liability Act? It is alleged, and admitted by the demurrer, that both plaintiff and defendant, at *all* times mentioned in the petition, were engaged in interstate commerce, hence the federal acts govern whatever cause, if any, plaintiff may have. Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 S. Ct. 635,

58 L. Ed. 1062; N. Y. Cen. R. Co. v. Porter, 249 U. S. 168, 39 S. Ct. 188, 63 L. Ed. 536; C. & O. Ry. Co. v. Stapleton, 279 U. S. 587, 49 S. Ct. 442, 73 L. Ed. 861; C. & O. Ry. Co. v. Kuhn, 284 U. S. 44, 52 S. Ct. 45, 76 L. Ed. 157.

The Federal Employers Liability Act, 45 U. S. C. A., Sec. 51, provides that "every common carrier by railroad while engaging in commerce between any of the several States, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, . . . or other equipment."

The Federal Employers Liability Act does not define negligence, hence the question of negligence, in a cause under the act, is governed by the common law principles as established and applied in the federal courts. Martin v. Wabash Ry. Co., 325 Mo. 1107, 30 S. W. (2d) 735, l. c. 741; Jenkins v. Wabash Ry. Co., 335 Mo. 748, 73 S. W. (2d) 1002, l. c. 1007, and cases there cited; Sweaney v. Wabash Ry. Co., 229 Mo. App. 393, 80 S. W. (2d) 216; Lloyd v. Alton R. Co., 351 Mo. 1156, 175 S. W. (2d) 819; Lynch v. New York, N. H. & H. R. R. Co., 294 Mass. 152, 200 N. E. 877; Kansas City Southern Ry. Co. v. Larsen, 195 Ark. 808, 114 S. W. (2d) 1081, l. c. 1085, certiorari denied 305 U. S. 621, 59 S. Ct. 82, 83 L. Ed. 307.

It is stated in defendant's brief that "the books contain no report" of a case where a locomotive fireman or engineer acquired silicosis in the manner charged in the petition, but for the purposes of the demurrer it stands admitted that plaintiff did so acquire silicosis.

As appears, supra, before recovery can be had under the Federal Employers Liability Act, it must be shown that the injury sustained was the result of negligence, and "it is a fundamental principle in the law of negligence that a person is not required to anticipate or guard against an occurrence which an ordinarily prudent and careful person could not have reasonably anticipated." Nelson v. Heinz Stove Co., 320 Mo. 655, 8 S. W. (2d) 918, l. c. 921; Jones v. St. Louis-S. F. Ry. Co., 333 Mo. 802, 63 S. W. (2d) 94, l. c. 98, and cases there cited; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. (2d) 91, l. c. 98, and cases there cited. "No one is held by the law to a higher degree of care than the average in the trade or business in which he is engaged. . . . A man, in conducting his business in the way that everybody else in a like business does, has measured up to the standard demanded by the law and has exercised the ordinary care of prudent men engaged in the business." McClaren v. G. S. Robins & Co., 349 Mo. 653, 162 S. W. (2d) 856, l. c. 858, and cases there cited; Smith v. Harbison-Walker Refractories Co., 340 Mo. 389, 100 S. W. (2d) 909, l. c. 922.

It will be noted that plaintiff alleges "that the sanding devices on said engines were all of the usual and customary type and used for the usual and customary purpose and if ordinary care was exercised in keeping them adjusted such large quantities of such sandy silica material would not escape." The implication from this allegation is that the sanders as such were not defective, but that the trouble was maladjustment. Just what was wrong with the adjustment is not alleged, and plaintiff does not claim that the situation is one for the res ipsa loquitur rule.

We do not think that it would be reasonable to hold, under the facts admitted by the demurrer, that defendant should have anticipated plaintiff's injury, and we, therefore, rule that the petition does not state facts sufficient to constitute a cause of action for negligence under the Federal Employers Liability Act.

█ Will the facts alleged support recovery for breach of duty under the Boiler Inspection Act? As appears, supra, the petition alleges that "defendant failed to keep the locomotive and appurtenances thereof . . . in a proper and safe condition to operate . . . without unnecessary peril to life and limb in that the defendant used in the sanding devices . . . a sand material containing a very high percentage or quantity of silica . . . ranging about 80 or 90 percent, and often said sanders were so that when they were set in operation . . . excessive and unnecessary quantities of such material would frequently come from the sanding devices onto the rails and . . . be ground to dust (which) would come . . . into the locomotive (cab) where plaintiff worked (and) be breathed by him, and defendant knew . . . that over a period of time such breathing of such dust was dangerous . . . and would likely cause" the injury complained of.

Negligence is not the basis for liability under the Boiler Inspection Act. This act "imposes upon the carrier an absolute and continuing duty to maintain the locomotive and all (its) parts and appurtenances thereof, in proper condition, and safe to operate . . . (in active service) without unnecessary peril to life or limb." Lilly v. Grand Trunk Western R. Co., 317 U. S. 481, 63 S. Ct. 347, 87 L. Ed. 323, and cases there cited. And it is further held in the Lilly case that "conditions other than mechanical imperfections can plainly render equipment unsafe to operate without unnecessary peril to life or limb."

Under the construction in the Lilly case, and many others, a sanding device or machine which is out of adjustment is an *unsafe* appliance, the very thing that the carrier, under the Boiler Inspection Act, *insures* against. Plaintiff alleges that the *omissions* of defendant caused his silicosis. Measured by the demurrer, one of the *omissions* was failure *to adjust* the sanding machines, and by the demurrer the result of such omission is plaintiff's silicosis. We think that the facts stated in the petition are sufficient to support recovery for breach of the Boiler Inspection Act.

220

■ Is plaintiff's cause barred by limitation? What is termed the Boiler Inspection Act, 45 U. S. C. A., Sec. 23, is a part of the Safety Appliance Act, 45 U. S. C. A., Secs. 1-50. There is no statute in the Safety Appliance Act prescribing a limitation, but since plaintiff was engaged in interstate commerce the question of limitation is governed by the three year limitation prescribed in the Federal Employers Liability Act. 45 U. S. C. A., Sec. 56; Lilly v. Grand Trunk Western R. Co., supra.

It is stated in the Lilly case [87 L. Ed. 1. ■ c. 325] that "any employee engaged in interstate commerce who is injured by reason of a violation of the Act (Boiler Inspection Act) may bring his action under the Federal Employers' Liability Act, charging the violation of the Boiler Inspection Act", citing Moore v. Chesapeake & O. R. Co., 291 U. S. 205, 210, 211, 54 S. Ct. 402, 78 L. Ed. 755, 759, 760; Great Northern R. Co. v. Donaldson, 246 U. S. 121, 38 S. Ct. 230, 62 L. Ed. 616, Ann. Cases 1918C, 581, 19 N. C. C. A. 391; Baltimore & Ohio R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419.

■ The present cause was commenced November 25, 1941. Plaintiff alleges that he first discovered his injury in May, 1940, and that from that time, he "has been totally incapacitated from carrying on his duties" for defendant, and that his cause of action did not accrue until May, 1940. If such be so, then defendant does not claim limitation has run. Silicosis is an occupational disease, and such disease has been defined as follows:

"An occupational disease, in its ordinary and accustomed sense, is a disease which is the natural incident or result of a particular employment, usually developing gradually from the effects of long-continued work at the employment, and serving, because of its known relation to the employment, to attach to the same a risk or hazard which distinguishes it from the ordinary run of occupations and is in excess of that attending employments in general." Evans v. Chevrolet Motor Co., 232 Mo. App. 927, 105 S. W. (2d) 1081, l. c. 1084. citing Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 81 S. W. (2d) 323; Downey v. Kansas City Gas Co., 338 Mo. 803, 92 S. W. (2d) 580; Lovell v. Williams Bros. (Mo. App.), 50 S. W. (2d) 710; Maupin v. American Cigar Co., 229 Mo. App. 782, 84 S. W. (2d) 218; Miller v. St. Joseph Transfer Co., 224 Mo. App. 1114, 32 S. W. (2d) 449; 71 C. J. 599.

Associated Indemnity Corp. v. State Industrial Accident Commission (Calif.), 12 Pac. (2d) 1075, was a compensation case. The injury was due to silicosis; the defense of limitation was interposed; the limitation was six months and began to run from the time of *injury*. In ruling the question it was said [12 Pac. (2d) l. c. 1076]:

"An occupational disease, such as that which is before us in the present proceeding, is one in which the cumulative effect of the continual absorption of small quantities of deleterious substance from the environment of the employment ultimately results in manifest

pathology; any one exposure to the deleterious substance is inconsequential in itself, but the accumulation of repeated absorptions is the factor which brings about the disease. It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves, and this would be, when the employee becomes disabled . . . . ''

Madison v. Wedron Silica Co., 352 Ill. 60, 184 N. E. 901, was an action for damages due to injury from the disease of silicosis. The plaintiff started working for the defendant in 1924, and continued until in 1930, when he "was forced to quit work because of his physical condition" caused by the disease of silicosis. The defendant contended a two years statute of limitations barred recovery because "the first inhalation or breach of duty was the damage and required the commencement of an action for damages for an injury within two years after the cause of action accrued." In ruling the question the court said:

"This court has recognized that an occupational disease is of slow development; an insidious illness that creeps unnoticed upon its victim. . . . To say that the plaintiff must have filed suit at the time of the first inhalation of the silica dust means that an injury could not, as a matter of fact, be proved. . . . The logical view is to consider the time when the employee is forced to quit work because of the cumulative effect of successive injuries resulting in final disablement rather than the first inhalation or injury. . . . The statute of limitations does not commence to run until the right of action arises. That arises upon disablement—i. e., when the occupational disease puts him in such a condition that he must quit work."

Plazak v. Allegheny Steel Co., 324 Pa. 422, 188 Atl. 130, was to recover damages for injury resulting from the disease of silicosis. Limitation was interposed. The court said [188 Atl. 1. c. 133]:

"The time when the injury has been wrongfully inflicted, when the cause of action accrues, and from which the limitation period begins, in actions of the class to which this belongs, is when the breach of duty to provide a reasonably safe working place occurs. If the relation is continuous, as in that of master and servant, and the default is likewise continuous until the cumulative effect produces disability in the form of occupational disease, total or partial, the master's failure to perform his duty, as we said above, is regarded as a single wrong continuing so long as the employment continues. Such wrong must therefore be redressed by action brought within two years and not thereafter from the time when the employment terminates."

222

Marsh v. Industrial Accident Commission, 217 Cal. 338, 18 Pac. (2d) 933, involved a silicosis case. In that case the supreme court of California said [18 Pac. (2d) 1. c. 935-7]:

"Depending upon the duration and intensity of the exposure to the dust, the size of the particles, the intercurrence of infections, and the like, the disease may develop within a comparatively few months or may take many years and may even manifest itself only after the lapse of several years following cessation of exposure. . . . In such an occupational disease, the specific date of origin is impossible of determination. It is the cumulative effect of exposure day after day that produces the injurious results; and because of the very fact that 'injury', in the statutory sense, is referable to a period of time rather than a point in time, some rational norm must be adopted for determining the 'date of the injury' in the practical application of the statute of limitations, embodied in the act. . . . The injury dates from the time when the diseased condition culminates in an incapacity for work. It is at that time that the employer's liability becomes fixed; for until then the workman had received no injury in the legal sense, though the seeds productive of the injury had lodged in his frame long before. . . . When a disease is latent and progressive, it may not culminate until a considerable time after the employment has terminated. So, if the disabling result is delayed, then the injury is correspondingly delayed, and the right to compensation does not accrue until the incapacity occurs."

In the present case, under the admissions made by the demurrer, plaintiff's cause of action accrued in May, 1940, when he became incapacitated, and was not barred.

The judgment should be reversed and the cause remanded, with direction to set aside the order sustaining the demurrer and dismissing the petition, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.