[Sac. No. 6841. In Bank. Mar. 7, 1958.]

MAYLON COOTS, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Perkins & Carr and Thomas C. Perkins for Appellant.

Devlin, Diepenbrock & Wulff and Forrest A. Plant for Respondent.

CARTER, J. This is an appeal by plaintiff, Maylon Coots, from a judgment entered after trial by the court upon the defendant's motion, pursuant to section 597 of the Code of Civil Procedure, that the applicable statute of limitations as set forth in defendant's fourth special defense barred plaintiff's cause of action.

Plaintiff, an employee of defendant Southern Pacific Company, commenced his action under the provisions of the Federal Employers' Liability Act on October 11, 1954, to recover for personal injuries sustained by him. Section 56 of the act (45 U.S.C.A.) provides that no action can be maintained thereunder unless commenced within three years from the date the cause of action accrued.

Plaintiff began working in silver cyanide solution in defendant's plating department in either December, 1947, or January, 1948. Sometime in 1949 he noticed small blisters and pimples on his hands which caused itching. In July, 1949, he went to the Southern Pacific Hospital where one of defendant's doctors diagnosed the difficulty as "Dermatitis, moderately severe, both hands." The report, under date of July 8, 1949 (Defendant's Exhibit B), shows that plaintiff signed a statement which attributed the skin difficulty on his hands with "Filtering cyanide solution which gets on hands causing a dermatitis" and "Having hands in solution." The report shows that the hands were "dressed with lotion" and plaintiff was "advised." The condition of plaintiff's hands became "real worse" in May or June of 1953; thereafter the condition spread to other parts of his body and became more severe and as of June, 1955, he was unable to work. On July 14, 1955, plaintiff was admitted to defendant's hospital. Apparently plaintiff was not advised to discontinue his work until he was discharged from defendant's hospital on September 12, 1955. On the report (under date of July 8, 1949) signed by defendant's doctor, appears the following question and answer: "11 *Give probable duration of disability.*" "None." (Emphasis added.)

Plaintiff contends that his cause of action did not accrue until he became disabled and unable to work in June, 1955. Defendant's position is that plaintiff's cause of action

accrued when he first became aware of his employment-connected injury. Both plaintiff and defendant rely on the decision of the United States Supreme Court in *Urie* v. *Thompson,* 337 U.S. 163 [69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252], in support of their arguments.

In the Urie case the claimant sought relief under the Federal Employers' Liability Act for injury due to silicosis contracted during the course of his employment. The Supreme Court there rejected the defendant's argument that because the claimant had been exposed to silica dust for 31 years prior to the commencement of his action he was barred by the provisions of section 56, title 45, of the United States Code. Defendant here argues that the court held that "awareness" of the disease rather than "disability" from it was the controlling factor in the Urie case. We do not so understand the Urie case.

The court in the Urie case had this to say (p. 168 et seq.) : "Urie filed suit on November 25, 1941. Under the terms of the then prevailing three-year statute of limitations [45 U.S.C.A. § 56], the court could not entertain the claim if Urie's 'cause of action accrued' before November 25, 1938. Respondent contends that Urie, having been exposed to silica dust since approximately 1910, must unwittingly have contracted silicosis long before 1938, and hence that his 'cause of action' must be deemed to have 'accrued' longer than three years before the institution of this action. Alternatively it may be argued that each inhalation of silica dust was a separate tort giving rise to a fresh 'cause of action,' and that Urie is therefore limited to a claim for inhalation between November 25, 1938, and the spring day in 1940 when he became incapacitated.

"In our view, however, neither of the outlined constructions of the statute of limitations can be sustained. For, if we assume that Congress intended to include occupational diseases in the category of injuries compensable under the Federal Employers' Liability and Boiler Inspection Acts, such mechanical analysis of the 'accrual' of petitioner's injury —whether breath by breath, or at one unrecorded moment in the progress of the disease—can only serve to thwart the congressional purpose.

"If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a de-

lusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.

"Nor can we accept the theory that each intake of dusty breath is a fresh 'cause of action.' In the present case, for example, application of such a rule would, arguably limit petitioner's damages to that aggravation of his progressive injury traceable to the last eighteen months of his employment. Moreover petitioner would have been wholly barred from suit had he left the railroad, or merely been transferred to work involving no exposure to silica dust, more than three years before discovering the disease with which he was afflicted.

"We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights. The record before us is clear that Urie became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that Urie should have known he had silicosis at any earlier date. 'It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves. . . .' *Associated Indemnity Corp.* v. *Industrial Accident Commission,* 124 Cal.App. 378, 381 [12 P.2d 1075]. The quoted language, used in a state workmen's compensation case, seems to us applicable in every relevant particular to the construction of the federal statute of limitations with which we are here concerned."

Defendant attaches much significance to the phrase "blameless ignorance" used by the court and to the fact that only part of the sentence found in the California Industrial Accident Commission case was quoted by the court. If we were

to construe the phrase "blameless ignorance" as contended for by defendant we would have to hold as a matter of law that the "moderately severe" dermatitis suffered by defendant in 1949 which was dressed by defendant's doctor with a "lotion" and which was considered by the doctor as not disabling was notice to the plaintiff that his work would eventually cause permanent and total disability. As the Supreme Court of the United States said in the Urie case: "Moreover petitioner would have been wholly barred from suit had he left the railroad, or merely been transferred to work involving no exposure to silica dust, more than three years before discovering the disease with which he was afflicted." In this connection it is noteworthy that at no time prior to the time plaintiff became totally disabled from exposure to the solution with which he was working did defendant's doctors advise him to stop that particular work.

The balance of the quotation from the California case (124 Cal.App. at 381) is as follows: "[A]nd this would be when the employee becomes disabled and entitled to compensation, that is, when under the well-established meaning of the term 'disability,' as used in compensation law, there is a combination of partial or total physical incapacity and of inability to work." Defendant argues that because the Supreme Court of the United States did not include in its quotation the entire sentence in the California decision that it did not mean to hold that the time of partial or total physical incapacity and inability to work was the time from which the statute of limitations began to run. It will be recalled that the Supreme Court approved the holding of the California court that "the afflicted employee can be held to be 'injured' *only when the accumulated effects of the deleterious substance manifest themselves. . . .*" (Emphasis added.) As the Supreme Court said in the Urie case (p. 187): "We do not think the mere difference in the time required for different acts of negligence to take effect and disclose their harmful, disabling consequences would justify excluding the one type of injury from the Act's coverage or that such an exclusion would be consistent with its language, purposes, or unvarying standards of construction." The Supreme Court in the Urie case specifically notes that it has followed a "constant and established course of liberal construction . . ." of the remedial and humanitarian purposes of the Federal Employers' Liability Act (337 U.S. 163, 181, 182). In *Jamison* v. *Encarnacion*, 281 U.S. 635, 640 [50 S.Ct. 440,

74 L.Ed. 1082], it was held that "The Act is not to be narrowed by refined reasoning. . . . It is to be construed liberally to fulfill the purposes for which it was enacted. . . ."

In an exhaustive note on this subject in 11 American Law Reports 2d at pages 277, 279, 297, the writer notes that "As to a claim arising under a workmen's compensation or occupational disease statute, it is much more reasonable to regard the time of disability as the time of the beginning of the running of limitations than is true of a cause of action for tort causing exposure to, and eventual, disease, the usual purpose of the occupational disease and workmen's compensation statutes being simply to provide for disability. But if it happens in a particular negligence case, as it often must, that disability is approximately coincident with manifestation of the disease, a reference to the statute as running from the time of disability may not be objectionable, as limited to that case."

We have concluded that plaintiff was "blamelessly ignorant" that the "moderately severe" dermatitis suffered by him in 1949 would lead to disability and that under no view of the evidence can it be said that the statute begins to run at any earlier time than in the year 1953 when the condition became "real worse." It is not necessary, however, for us to determine whether the statute began to run in 1953 or in 1954 when, according to the allegations of plaintiff's complaint, his employment-connected disease prevented him from performing his usual work "from time to time" inasmuch as either time is well within the statute of limitations.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Schauer, J., concurred.

SPENCE, J.—I concur in the reversal of the judgment.

In my opinion, however, this court should more clearly set forth the rule for determining when the cause of action accrues and the statute of limitations commences to run in cases which are brought under the federal act and which involve progressive diseases. The majority opinion necessarily holds that the statute did not commence to run in this case at the time of the first minor manifestation of plaintiff's dermatitis in 1949; but it implies that the statute may not have commenced to run until some five years thereafter when plaintiff became disabled for work in 1954 or 1955. The vice of the failure of the majority to determine just when the

statute did commence to run is that it leaves the decision here open to the charge that it is inconsistent with the decision of the United States Supreme Court in *Urie* v. *Thompson,* 337 U.S. 163 [69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252].

Both plaintiff and defendant rely upon their conflicting versions of the effect of the decision in the Urie case. That was a silicosis case in which the first known manifestation of that serious disease was practically simultaneous with the employee's disability to work. As the court there said at page 170: ''The record before us is clear that Urie became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that Urie should have known he had silicosis at any earlier date.'' It was further said that the afflicted employee can be held to be ''injured'' only ''when the accumulated effects of the deleterious substance manifest themselves.'' Defendant would have this court adopt a strict construction of this language and hold that the statute commenced to run in the present case at the time of the first minor manifestation of plaintiff's dermatitis in 1949. On the other hand, plaintiff would have us adopt the reasoning of the Missouri Supreme Court in the Urie case (*Urie* v. *Thompson,* 352 Mo. 211 [176 S.W.2d 471]), and hold that the statute did not commence to run until plaintiff became disabled in 1954 or 1955. Both courts reached the same result in the Urie case upon different lines of reasoning but only because there the time when the accumulated effects of the deleterious substance manifested themselves and the time when the employee became disabled were for all practical purposes one and the same time. It is significant, however, that the United States Supreme Court carefully refrained from adopting the reasoning of the Missouri Supreme Court in deciding the Urie case.

It appears to me that the reasoning in the majority opinion tends to confuse the time of the commencement of the period of limitations in a workmen's compensation case with the time of such commencement in a negligence case. The distinction between the two types of cases for this purpose is clearly indicated in an annotation to *Urie* v. *Thompson, supra,* 337 U.S. 163 (11 A.L.R.2d 277).

The present action is a negligence action, as it is based upon the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.). Unlike the ordinary proceeding instituted under a workmen's compensation statute or an occupational disease statute, negligence, rather than disability, is the basis upon

which liability is predicated. Such liability may therefore exist prior to actual inability to work, and even in the absence of any such inability. Thus the following language, quoted in the majority opinion from 11 American Law Reports 2d, at page 297, indicates the factual background which caused the United States Supreme Court and the Missouri Supreme Court to reach the same result in the Urie case despite the use of different lines of reasoning: "As to a claim arising under a workmen's compensation or occupational disease statute . . . , it is much more reasonable to regard the time of disability as the time of the beginning of the running of limitations than is true of a cause of action for tort causing exposure to, and eventual, disease, the usual purpose of the occupational disease and workmen's compensation statutes being simply to provide for disability. *But if it happens in a particular negligence case, as it often must, that disability is approximately coincident with manifestation of the disease, a reference to the statute as running from the time of disability may not be objectionable, as limited to that case.*" (Emphasis added.)

In the present case, however, the uncontradicted factual background shows that "disability" was not "approximately coincident with manifestation of the disease," and therefore any implication in the majority opinion that the statute of limitations may not have commenced to run until the time of plaintiff's actual inability to work is not only objectionable, but it appears to be inconsistent with the rule above quoted from the opinion of the United States Supreme Court in the Urie case.

The question then arises as to whether the conclusion can be reached here under the uncontradicted facts that the statute of limitations had not barred plaintiff's action in line with the "constant and established course of liberal construction" of the federal act (*Urie* v. *Thompson, supra,* 337 U.S. 163, 181-182), and without doing violence to the rule enunciated in the Urie case. I believe that this conclusion can and should be reached. A brief statement of that factual background should suffice.

Plaintiff's dermatitis, which is defined as "Inflammation of the derma, or true skin" (Webster's New International Dictionary, 2d ed.), first manifested itself on his hands in a relatively minor way in 1949. He then claimed that it was caused by "having hands in solution [cyanide]" while engaged in his work. Defendant's doctors, who treated plaintiff

at that time, knew of that claim and apparently agreed. His hands were then merely "dressed with lotion" and he was "advised." Plaintiff evidently desired to continue his work, and he did so with the knowledge and consent of defendant employer. While plaintiff claimed in 1949 that his condition resulted from his employment, both plaintiff and his employer apparently believed it to be a mere minor and temporary condition rather than one of a serious or permanent nature. Furthermore, there is no evidence to show that if plaintiff had not been further exposed to contact with the cyanide solution while continuing his employment, he would have experienced any more than a minor and temporary condition which would have promptly terminated. He nevertheless continued his work and his contact with the cyanide solution. It was not until May or June of 1953 that the condition of his hands became "real worse" and spread to other parts of his body. The progressive condition did not actually prevent him from working until 1954 or 1955.

Under the particular circumstances of this case, I am of the opinion that it should be held that plaintiff's cause of action accrued and the statute of limitations commenced to run in 1953, when there was the first manifestation of *substantial* harm to plaintiff, and that therefore his cause of action was not barred by the three-year statute when the suit was commenced in 1954.

While no case directly in point has been found, this may be explained by the fact that negligence cases involving progressive diseases, where the "injury" results from continued exposure rather than from traumatic causes, have been relatively few in number; and by the further fact that in the few cases, including the Urie case, which have reached the appellate courts, the disease was of such nature that the manifestation of substantial harm has ordinarily been practically simultaneous with the inability to continue work. Hence this case, in a very real sense, must be considered one of first impression. This is not the first time, however, that this court has been called upon to innovate rules to meet the peculiar problems facing the employee who may suffer from a progressive disease resulting from his employment. (See *Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79 [172 P.2d 884].) Nevertheless, we are here dealing with a case arising under the federal act, and it is imperative that any rule which we apply should be consistent with the federal decisions such as *Urie* v. *Thompson, supra,* 337 U.S. 163, and *James* v. *Pennsyl-*

*vania R.R. Co.,* 196 F.2d 1021. The above suggested theory is consistent with those decisions, but the implication in the majority opinion that the cause of action may not have accrued with plaintiff's actual inability to work appears to be inconsistent therewith.

The theory that the cause of action should not be deemed to have accrued here until the manifestation of *substantial* harm finds support in the comments on the Urie decision. "It would seem preferable, in all cases where the harm is of a gradually increasing and inherently unknowable nature, to delay commencement of the statutory period until manifestation of *substantial* harm." (Emphasis added; Development in the Law, Statutes of Limitations, 63 Harv.L.Rev. 1177, 1207.) It further finds support in the language used in *Piukkula* v. *Pillsbury Astoria Flouring Mills Co.,* 150 Ore. 304 [42 P.2d 921, 929, 99 A.L.R. 244], where the court speaks of the time when the disease has reached "*substantial proportions and had inflicted upon him an appreciable injury.*" (Emphasis added.)

This theory offers a practical approach to the problem, and it achieves a just result. The minor manifestation of skin trouble on plaintiff's hands prior to 1953 was of such nature that it may be treated as *de minimis.* It was so treated by the parties and it is a maxim of our jurisprudence that "The law disregards trifles." (Civ. Code, § 3533.) Human experience indicates that comparable conditions ordinarily terminate with the passage of a brief period of time; and it does not comport with sound public policy to require an employee, at his peril, to engage in litigation with his employer when an apparently minor and temporary manifestation of skin trouble occurs. It now appears that with the continuation of his work and continued exposure to the cyanide solution, the harm was essentially of a "gradually increasing and inherently unknowable nature," at least until such time as it had resulted in substantial harm to plaintiff. That harm which appeared minor and temporary prior to 1953 clearly became substantial in that year, when the skin trouble became worse and spread to other parts of plaintiff's body. Thus it was not until 1953 that it may be fairly said that the accumulated effects of the exposure manifested themselves in substantial harm to plaintiff. Under these circumstances it seems logical to conclude that the statute did not begin to run until such "manifestation of substantial harm" in 1953. In my opinion,

the United States Supreme Court would have arrived at a similar conclusion if it had had this particular problem before it in the Urie case.

In view of my conclusion that it should be held that the statute of limitations did not commence to run until the manifestation of substantial harm in 1953, it is unnecessary to consider whether, in any event, defendant employer should be held to have waived the running of the statute of limitations for the period during which plaintiff continued to work at the same employment with defendant's consent and continued to receive treatment from defendant's medical facilities for an affliction which appeared to be of a relatively minor and temporary nature.

For the reasons stated, I concur in the reversal of the judgment.

McCOMB, J.—I dissent, for the reasons expressed by Mr. Justice Warne in the opinion prepared by him for the District Court of Appeal, (Cal.App.) 311 P.2d 40.