Luther L. KING, Appellant,

v.

MONSANTO CHEMICAL COMPANY, Appellee.

No. 15886.

United States Court of Appeals Eighth Circuit.

July 9, 1958.

Mortimer A. Rosecan, St. Louis, Mo., for appellant.

John F. Evans, St. Louis, Mo. (Evans & Dixon, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a summary judgment in favor of the defendant (appellee) in an action brought by the plaintiff (appellant) to recover $150,000 damages upon the claim that he acquired cancer of the urinary tract as the result of being negligently exposed by the defendant to harmful chemicals while employed as a pipefitter at its John F. Queeney Plant in St. Louis, Missouri.[1] Jurisdiction is based on diversity of citizenship.

In its answer the defendant denied that the plaintiff's diseased condition was the result of negligence on its part. The defendant alleged that both parties were subject to the Workmen's Compensation Act of Missouri (Chapter 287, RSMo 1949, sections 287.010 to 287.800, V.A. M.S.), including the Occupational Disease Amendment, effective September 14, 1931, Laws of Missouri 1931, p. 382, R.S.Mo. 1939, § 3695(b)[2] (now section 287.020, subd. 4, RSMo1949, V.A.M.S.), and that plaintiff's rights and defendant's liabilities are exclusively such as are prescribed by that Act. In other words, the defendant asserted that the plaintiff's disease was an "occupational disease" compensable under the Missouri Workmen's Compensation Act, and not otherwise, and that he had received and accepted compensation and benefits from the defendant in conformity therewith.

---

1. The complaint alleged:

"That for about eleven (11) years prior to September 15, 1955, plaintiff was employed by the defendant Monsanto Chemical Company as a Pipe Fitter in the John F. Queeney Plant, during which times he was required to work in Departments 26 and A–5; that at all of said times the defendant caused, allowed and permitted poisonous, noxious and deleterious chemicals, fumes, vapors, gases and other substances to enter into and permeate said places in such quantities as to be harmful to the plaintiff and under conditions which plaintiff, during the course of his work, was required and did gradually breathe, inhale, contact and absorb; that as a result of the cumulative effect of said gradual inhalation, contact and absorption of said poisonous, noxious and deleterious chemicals, fumes, vapors, gases and other substances over a period of years, the plaintiff became permanently disabled on and after September 15, 1955, and he was caused to suffer the following injuries hereinafter described. * * *"

2. "* * * Provided, that nothing in this chapter contained shall be construed to deprive employees of their rights under the laws of this state pertaining to occupational diseases, *unless the employer shall file with the commission a written notice that he elects to bring himself with respect to occupational disease within the provisions of this act and by keeping posted in a conspicuous place on his premises a notice thereof to be furnished by the commission, and any employee entering the services of such employer and any employee remaining in such service thirty days after the posting of such notice shall be conclusively presumed to have elected to accept this section unless he shall have filed with the commission and his employer a written notice that he elects to reject this act.*" [The matter italicized constitutes the Occupational Disease Amendment.]

The defendant's motion for summary judgment was based upon the ground that the plaintiff's disease was covered by and compensable under the Workmen's Compensation Act of Missouri. The motion was supported by affidavits showing that both parties were under the Act; that the diseased condition of the plaintiff arose, as he asserted in his complaint, from absorbing harmful chemicals to which he was exposed during the course of his employment and incidental to his work; and that the defendant had recognized and fulfilled its obligations in conformity with the Workmen's Compensation Act.

The plaintiff's contention was, and is, that, while his cancerous condition arose out of, in connection with, and as a result of his employment, it was not an occupational disease, because it was not "peculiar to and directly incidental" to his work as a pipefitter at the defendant's plant, was not "known and recognized" in the "common experience of mankind" as an occupational disease, and the plaintiff had not contracted with the defendant to limit his rights to those prescribed by the Workmen's Compensation Act.

It is conceded that the parties were both subject to the Act. It is, therefore, clear that if the plaintiff's cancerous condition is an "occupational disease" within the meaning of the Missouri Workmen's Compensation Act, he is, as the defendant contends, entitled to nothing more than the compensation and other benefits provided by that law for an employee in his condition and with his disability.

In support of his contentions, the plaintiff cites the cases of Lovell v. Williams Bros., Inc., Mo.App. St. Louis, 50 S.W.2d 710, 713, and Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 759, 81 S.W.2d 323, 330. Both of these cases, as the plaintiff states in his brief, dealt with the Workmen's Compensation Act as it was prior to the enactment of the Occupational Disease Amendment. In the Lovell case, the St. Louis Court of Appeals said (at page 713 of 50 S.W.2d):

"It is obvious that there is nothing in the evidence to sustain a finding that plaintiff suffered from an occupational disease. Such a disease is defined to be a disease contracted in the usual and ordinary course of events, which, from the common experience of humanity, is known to be incidental to a particular employment. It ordinarily results from long-continued work in the particular employment."

In the Wolf case, the Supreme Court of Missouri adopted, in substance, the definition of "occupational disease" found in the Lovell case, as one "contracted in the usual and ordinary course of events, which, from the common experience of humanity, is known to be incidental to a particular employment." At page 330 of 81 S.W.2d.

The only definition of "occupational disease" that can be deduced from the statutes of Missouri is that contained in the provisions for the health and safety of employees, R.S.Mo. 1929, § 13252 et seq.; RSMo1949, § 292.300 et seq. (V.A.M.S. § 292.300 et seq.). Sections 292.300 and 292.310 provide:

"292.300. *Employer to provide protection to employees from diseases.* That every employer of labor in this state engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employee to the danger of illness or disease incident to such work, trade or process, to which employees are exposed, shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process."

"292.310. *Articles considered dangerous to health.* The carrying on of any process, or manufacture, or labor in this state in which anti-

mony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used, employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are hereby declared to be especially dangerous to the health of the employees."

In Urie v. Thompson, 352 Mo. 211, 220, 176 S.W.2d 471, 476, decided in 1944, the Supreme Court of Missouri said:

"An occupational disease, in its ordinary and accustomed sense, is a disease which is the natural incident or result of a particular employment, usually developing gradually from the effects of long-continued work at the employment, and serving, because of its known relation to the employment, to attach to the same a risk or hazard which distinguishes it from the ordinary run of occupations and is in excess of that attending employments in general."

See, also, Evans v. Chevrolet Motor Co., 232 Mo.App. 927, 105 S.W.2d 1081, 1084. This definition corresponds rather closely to that given in Black's Law Dictionary, Fourth Edition, page 1230, which is: "Disease gradually contracted in usual and ordinary course of employment, because thereof, and incidental thereto."

■ Apparently it is the plaintiff's theory that if a disease, at the time it was contracted, was not known to be incidental and peculiar to an occupation, it was not an "occupational disease," and the fact that it subsequently came to be known to have resulted from and to be incidental and peculiar to that occupation would not bring it within the coverage of the Workmen's Compensation Act as an "occupational disease." That seems to us to be illogical, since it is fair to assume that as to employers and employees who accepted the Occupational Disease Amendment, the Workmen's Compensation Act was intended to cover both injuries and diseases resulting from and incidental to the hazards of a particular occupation in which they were engaged.

■ It must be remembered that the decisional law of the State of Missouri is not patterned by the federal courts. The coverage of the Workmen's Compensation Act of that State, the scope of the language used by the Legislature which enacted it, the evils which it was intended to remedy, are for the State courts of Missouri to decide. This Court has repeatedly refused to substitute its judgment for that of a federal trial judge with respect to a doubtful question of law of his state.

Judge Moore, a Missouri federal judge of long experience, concluded that, under the undisputed facts, the disease was an occupational one, compensable under the Missouri Workmen's Compensation Act. We are asked to reverse his determination, which apparently is not opposed to any decision of any court of Missouri involving the identical or a closely analogous question.

In the recent case of Marie v. Standard Steel Works, 311 S.W.2d 368, at pages 370–371, the Kansas City Court of Appeals, in deciding that a noise-induced hearing loss was not an occupational disease within the meaning of the Workmen's Compensation Act of Missouri, said:

"It is clear that the Legislature intended, and said, that 'occupational diseases' are those which may be caused by the handling, and lodging within the body of chemically toxic substances. The following sections [sections following § 292.310 V.A. M.S.] emphasize and underline this intention, providing as they do for proper working clothing, for respirators against 'noxious or poisonous dusts,' V.A.M.S. § 292.320; for medical examination of employees in direct contact with the poisonous agencies or injurious processes 're-ferred to,' etc. It would be difficult to express more clearly the Legisla-

tive intent; 'occupational diseases', without attempting a categorical listing of each and every one by medical nomenclature, are those produced by poisonous chemicals, fumes, gases and dusts; substances which enter the body as foreign matter and lodge therein to the worker's harm. * * *"

The Marie case, we think, clearly indicates that the District Court reached a permissible conclusion with respect to a question of Missouri law. In Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734, we said:

"This case in principle differs in no controlling respect from others in which this Court has consistently refused to attempt to outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his State. See and compare, Buder v. Becker, 8 Cir., 185 F.2d 311, 315; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243; Guyer v. Elger, 8 Cir., 216 F.2d 537, 540–541, certiorari denied 348 U.S. 929, 75 S.Ct. 342, 99 L.Ed. 728; Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695, 697; Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, 53 A.L.R. 1376; Bostian v. Universal C. I. T. Credit Corporation, 8 Cir., 238 F.2d 809, 812; Milwaukee Insurance Co. v. Kogen, 8 Cir., 240 F.2d 613, 615."

We are satisfied that the judgment appealed from was not induced by any clear misconception or misapplication of the applicable Missouri law. We are also satisfied that the determination by the District Court that the plaintiff's disease was covered by the Workmen's Compensation Act justified the entry of a summary judgment for the defendant.

The judgment appealed from is affirmed.