[No. A039838. First Dist., Div. Two. Oct. 11, 1989.]

REOLA B. DUTY, Plaintiff and Appellant, v.
ABEX CORPORATION et al., Defendants and Respondents.

COUNSEL

Alan R. Brayton, McQuaid, Bedford, Brayton, Clausen & Grell, Bryce C. Anderson and Berry & Berry for Plaintiff and Appellant.

Thomas M. Peterson, Carol B. Sharp, Brobeck, Phleger & Harrison, Tarkington, O'Connor & O'Neill, Eugene Brown, Eliot Jubelirer and Hassard, Bonnington, Rogers & Huber for Defendants and Respondents.

OPINION

KLINE, P. J.—

### INTRODUCTION

Plaintiff Reola B. Duty appeals the judgment dismissing her lawsuit based upon injury due to exposure to asbestos. The trial court directed verdict in favor of defendants on the ground the statute of limitations had run. Pursuant to Code of Civil Procedure section 340.2[1] the asbestos injury limitations period does not begin to run until "disability." Plaintiff contends that a retired person such as herself is not precluded from regular employment by her injury and therefore cannot suffer a "disability" within the meaning of the statute of limitations, which therefore never commenced to run as to her. In the event the statute does apply to limit actions on behalf of retired persons, plaintiff contends that it was for the jury to determine whether she had been disabled from performing her normal occupation of homemaker.

We conclude that section 340.2 does apply to civil actions by retirees for injury caused by asbestos exposure. Because the statutory definition of "disability" does not apply to a retired person such as plaintiff this action was not barred. We therefore reverse the judgment.

### STATEMENT OF FACTS

Plaintiff, who was born in 1903, was 84 years old at the time of trial. From 1944 to 1945 she was employed as a machinist's helper and optical shop worker at Hunters Point Naval Shipyard. When the Korean War broke out, she returned to the Hunters Point Shipyard where she worked from 1951 to 1953. She also worked doing housekeeping at the Marines

---

[1] All statutory references are to the Code of Civil Procedure.

Memorial Club, Elizabeth Arden and the Furniture Mart. She retired from her last job in 1968. Since 1973, when her husband died, she has lived alone, doing housework, shopping, gardening and going to church meetings. She also spent some of her time helping to clean her daughter's house.

In April 1979, X-rays revealed plaintiff had lung cancer. At that time she was told by her doctors that the cancer was caused by her earlier exposure to asbestos. Surgery was performed, and a lower lobe of her right lung was removed. Following surgery, plaintiff was hospitalized for eight days. Within a few months she resumed light household tasks, such as shopping and going to the laundromat. She resumed helping her daughter with light housecleaning. At the time of trial plaintiff's day involved many of the ordinary daily activities she was able to carry out between 1973 and 1979. However, she could no longer do some of the heavier cleaning she had done prior to her surgery in 1979. Plaintiff freely admitted that since the surgery in 1979 she could not do all of the tasks she had previously undertaken.

## STATEMENT OF THE CASE

Plaintiff filed her complaint for damages for personal injury due to asbestos exposure on November 19, 1985. The matter was set for trial on June 29, 1987, against the Asbestos Claims Facility defendants,[2] Western MacArthur Company and Plant Insulation. A separate trial was first held on the application of the statute of limitations. Following the presentation of evidence, the trial court granted defendants' motion for a directed verdict, finding that "the statute ran one year after plaintiff's surgery in 1979, plaintiff being informed that her cancer was asbestos-related."

Specifically, the court found that the Legislature contemplated "disability" as defined in section 340.2 to mean "a permanent termination of an individual's capacity to perform the tasks involved in his or her regular occupation as to one who is presently in the labor market." According to the trial court, "[t]here was disability at the time of surgery and there was notice, and that satisfies the requirements of the code as to an individual who has taken herself out of the labor market long before the unfortunate occurrence in this case, her lung cancer, and her surgery." The trial court also provided an alternative basis for its judgment: "If the court were to give a construction to paragraph (b) [of section 340.2] and conclude that it included retired individuals, which it does not, then the court finds there is no substantial evidence that plaintiff had the capacity after her surgery in

---

[2] The Asbestos Claims Facility, also sometimes referred to as the "Wellington Group," is an association of asbestos manufacturers who have joined together in a common defense of asbestos claims and who are represented as a group, pursuant to General Order No. 38 of the San Francisco Complex Asbestos Litigation.

1979 to perform the tasks of a homemaker as measured by its demands prior to surgery."

## DISCUSSION

Section 340.2 provides in pertinent part as follows:

"(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following:

"(1) Within one year after the date the plaintiff first suffered disability.

"(2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure.

"(b) 'Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation."

We previously discussed the history of section 340.2 in *Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101 [200 Cal.Rptr. 52]:

"Prior to the enactment of section 340.2, causes of action such as those involved here were governed by the one-year statute of limitations for negligence or strict liability claims set forth in Code of Civil Procedure section 340, subdivision (3), and the limitations period commenced at the time of the wrongful act. To ameliorate the harsh application of the one-year statute in cases involving latent occupational diseases courts began to apply a 'discovery rule,' holding that the statute did not begin to run until the plaintiff discovered or should have discovered his disease. Thus, negligence and strict liability claims for asbestos-caused injury were held to have accrued for purposes of section 340, subdivision (3) when the plaintiff knew or should have discovered 'that he was suffering from a disease that had caused or was likely to cause him injury for which relief could be sought at law.' (*Velasquez* v. *Fibreboard Paper Products Corp.* (1979) 97 Cal.App.3d 881, 887-888 . . . .)

"The Legislature, anticipating the concerns expressed in *Velasquez* with respect to the time for commencement of actions for asbestos-related injuries, enacted Senate Bill No. 564, adding section 340.2 to the Code of Civil Procedure. In his letter to then-Governor Brown, Senator Marks, the author of the bill, discussed its purpose: 'The purpose of S.B. 564 is to relieve victims of asbestos-related diseases from a potentially harsh application of the statute of limitations which was designed not for disease claims but for victims of traumatic injury. [¶] Under existing law, the statute of limitations for any action based on injury or death of a person caused by the wrongful act or neglect of another is one year from the date of the injury or death. It

is important to know that the most serious of asbestos-related diseases often take from 15 to 35 years to develop. [¶] My bill provides that an action for injury or illness based upon exposure to asbestos is to be commenced within one year after the date the plaintiff first suffered disability therefrom and either knew or should have known such disability was caused by such exposure." (*Blakey, supra,* 153 Cal.App.3d at pp. 104-105, fn. omitted.)

■ As we stated in *Blakey,* "[s]ection 340.2 in effect codified the 'discovery rule' enunciated in *Velasquez* with one significant difference. Section 340.2 provides that the statute never commences to run until the plaintiff suffers a 'disability.' Disability as defined in section 340.2 means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation." (153 Cal.App.3d at p. 106.) We recognized "[i]t may seem somewhat anomalous that the statute of limitations with respect to complainants who *actually know* that they have sustained injury or illness as a result of asbestos exposure never commences to run until the occurrence of 'disability' within the meaning of section 340.2, regardless of when knowledge of the injury or illness was acquired. That is the effect, however, of the statutory scheme enacted by the Legislature." (*Id.,* at p. 107.) We noted that it was our function as a reviewing court, "to apply the statute as written." (*Ibid.,* citation omitted.)

Pointing out that section 340.2 applies by its own terms to "any civil action for injury or illness based upon exposure to asbestos," plaintiff maintains that it applies to actions commenced by retirees. However, contending that a retiree cannot suffer a "disability" within the meaning of the statute—because a retiree is not an "employee" and does not possess a "regular occupation"—plaintiff also maintains that the one-year period prescribed in the statute never commences to run with respect to persons who retired before the onset of what might otherwise be thought a "disability."

Defendants, on the other hand, maintain that the statute does apply to a retiree, like plaintiff, who is engaged in the occupation of homemaker and operates to bar an action by a retiree so employed as if she were an active member of the labor force. If the statute does not apply to retired persons, defendants argue in the alternative, then the discovery rule prescribed in *Velasquez* v. *Fibreboard Paper Products Corp.* (1979) 97 Cal.App.3d 881 [159 Cal.Rptr. 113] should trigger the running of the one-year statute of limitations.

■ "Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice through preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have

disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (*Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348-349 [88 L.Ed. 788, 792, 64 S.Ct. 582]; *Shain* v. *Sresovich* (1894) 104 Cal. 402, 406 [38 P. 51].)

On the other hand, the need for repose is not so overarching that the Legislature cannot by express legislative provision allow certain actions to be brought at any time, and it has occasionally done so. (See, e.g., § 348. ["To actions brought to recover money or other property deposited with any [financial institution] . . . there is no limitation."] See also, 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 348, pp. 378-379.) Additionally, case law has established that certain other proceedings with respect to which the Legislature has not specified any statute of limitations may also be brought at any time. (See, e.g., *Elbert, Ltd.* v. *Nolan* (1948) 32 Cal.2d 610, 616 [197 P.2d 537] [right of a cotenant to bring an action for partition]; *Hironymous* v. *Hiatt* (1921) 52 Cal.App. 727, 736 [199 P. 850] [action to cancel or disregard instrument wholly void]; see also, 3 Witkin, Cal. Procedure, *supra,* § 350, p. 380.)

Counsel for plaintiff strenuously endeavors to persuade us that the Legislature had ample policy reasons to in effect relieve retired persons of the bar of a statute of limitations. Opposing counsel argues with equal vigor that the Legislature had no such purposes and because the words appearing to reflect such an intention were used inadvertently it would be absurd to give them the "slavishly literal" meaning urged by plaintiff. The competing contentions seem to us equally tenable, an equipoise making us loath to embellish the words in question with a gloss that departs from their ordinary meaning. ■ The burden is on defendants. Unless they are able to "demonstrate that the natural and customary import of the statute's language is either 'repugnant to the general purview of the act,' or for some other compelling reason, should be disregarded, this court must give effect to the statute's 'plain meaning.' [Citation.]" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].) Though there is some doubt in our minds as to what the Legislature meant, or whether it even consciously addressed the issue presented by this case, we cannot say that the literal interpretation urged by plaintiff is "repugnant" to the obvious purpose of section 340.2. (Compare, *Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 617 [200 Cal.Rptr. 575]); nor can we conceive any other reason to depart from the conventional meanings of the key words.

■ As plaintiff points out, subdivision (a) of the statute does not exclude actions by retirees or homemakers but applies to "*any civil action for*

injury or illness based upon exposure to asbestos." Refusal to apply the statute to retirees or those not actively participating in the labor force, as defendants urge, would result in application of the less generous limitations period enunciated in *Velasquez, supra,* 97 Cal.App.3d 881, contrary to the legislative intent we described in *Blakey, supra,* 153 Cal.App.3d at page 105, and the remedial purpose of the statute. "Both language in the enactment and the remarks of the author of the legislation support the conclusion that the Legislature intended the special statute to be remedial in purpose, subject not only to liberal construction but to retroactive application in a manner which would encompass the causes of action of as many victims of asbestosis as possible." (*Puckett* v. *Johns-Manville Corp.* (1985) 169 Cal.App.3d 1010, 1015-1016 [215 Cal.Rptr. 726].)

We conclude that section 340.2 governs plaintiff's claim.

The same principles of statutory construction compel us to conclude that retirees such as plaintiff have not suffered a "disability," as defined by subdivision (b) of the statute. Thus, the limitations period has not commenced.

Subdivision (b) defines "disability" as used in subdivision (a) to mean "the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation." As we recognized in *Blakey* v. *Superior Court, supra,* 153 Cal.App.3d at page 107, "the definition of 'disability' in section 340.2 gave a specific meaning to what had been a generic term." By its own terms, the limitations period does not begin until the asbestos-related injuries cause a permanent termination of the plaintiff's ability to perform his or her job, which actually forces the plaintiff off the job. (See *Puckett* v. *Johns-Manville Corp., supra,* 169 Cal.App.3d at p. 1017.)

■ " 'When a statute prescribes the meaning to be given to particular terms used by it, that meaning is generally binding on the courts.' " (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 156 [137 Cal.Rptr. 154, 561 P.2d 244], quoting *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638 [268 P.2d 723].) "In the absence of compelling countervailing considerations, we must assume that the Legislature 'knew what it was saying and meant what it said.' " (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227], quoting *People* v. *Rodriguez* (1963) 222 Cal.App.2d 221, 227 [34 Cal.Rptr. 907].)

■ Defendants urge us to ignore the literal meaning of the statute as the result would be to confer an exemption from any limitations period

upon a class of persons—retirees and the unemployed—which the Legislature could not have intended.

■ In *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com., supra,* 153 Cal.App.3d 605, we recognized that the "plain meaning" rule is often deceptive, as "it may erroneously be taken to imply that words have intrinsic meanings." (*Id.,* at p. 613.) The meaning of the words of a statute, we observed, "can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part." (*Id.,* at p. 614.) "The courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective. [Citation.]" (*Ibid.,* fn. omitted.) The literal construction of a statute will not prevail if it is opposed to the intent of the Legislature apparent from the statute; and we will adopt another construction to effectuate the legislative intention, if the words are sufficiently flexible to admit of such other construction. (*Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 259-260 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Leslie Salt Co. v. San Francisco Bay Conservation etc. Com., supra,* at pp. 614-615.)

■ We are convinced that the language used by the Legislature to define "disability" in section 340.2, subdivision (b) is not sufficiently flexible to encompass plaintiff. Had the Legislature used simply the terms "work" or "regular occupation," we might find it possible to construe that language to encompass retirees such as plaintiff who, although not a member of the labor force, could be considered engaged in the occupation or work of homemaking. However, the addition of the term "employee" and the context of the subdivision as a whole compel us to conclude the Legislature intended "disability" to apply only to persons employed in the labor force.

Moreover, interpreting the statute in accordance with its plain meaning is not inconsistent with the purposes or objectives of the statute. One of the primary purposes of the statute is to encourage asbestos victims to continue working without fear that by doing so they are jeopardizing their recovery rights. As the court stated in *Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 735 [218 Cal.Rptr. 562]: "This delayed accrual rule is more in keeping with the gradually disabling nature of the disease. Since asbestosis is a progressive lung disease, the product of prolonged exposure to asbestos fibers and dust, the disease may be detected before there has been any significant respiratory impairment or resulting partial or total disability. [Citations.] Principles of fairness and social utility favor application of this remedial statute to plaintiffs such as Nelson. It is for society's as well as the individual's benefit that asbestosis victims should work as long as they are

able to do so without placing their rights in jeopardy. (*Puckett* v. *Johns-Manville Corp., supra,* 169 Cal.App.3d 1010.) It would make no sense to penalize those victims who may have received an early diagnosis, particularly since there appears to be no evidence of any cure." (*Id.,* at p. 735.) Our interpretation of the term "disability" to exclude retirees such as plaintiff, has no discernable impact on this primary statutory purpose.

Although it does not affirmatively appear that it considered the effect of the statute upon retirees or the unemployed, the Legislature rejected a proposed version of the statute more in line with defendants' concept of coverage. That version defined "disability" as "physical impairment and diminution of earning capacity to a substantial degree as a result of such exposure . . . ." (Sen. Bill No. 564 (1979-1980 Reg. Sess.) § 1.) The rejection of this broader language presumably indicates that the Legislature intended the narrow application that results from literal interpretation. Inviting as it might be to conclude that the term "disability" is broad enough to encompass plaintiff and other retirees, we may not engage in such judicial redefinition of the term, given the history of the enactment.

Although the result of the definition settled upon by the Legislature may be unduly favorable to retired and unemployed plaintiffs, it is not contrary to the remedial purpose served by the statute. Nor do we view the need to impose a statute of limitation on asbestos-related claims to constitute a "compelling countervailing consideration[ ]" of sufficient gravity to warrant disregarding the plain meaning of the statute. (*Tracy* v. *Municipal Court, supra,* 22 Cal.3d 760, 764.) ■ "Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. . . . They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right . . . . [T]he history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control. [Fn. omitted.]" (*Chase Securities Corp.* v. *Donaldson* (1945) 325 U.S. 304, 314-315 [89 L.Ed. 1628, 1635-1636, 65 S.Ct. 1137], quoted in *Nelson* v. *Flintkote Co., supra,* 172 Cal.App.3d 727, 734.) "Similarly, as our Supreme Court recently pointed out in *Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 56-57 . . . : 'The principle is . . . well established that "[s]tatutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff's rights . . . ." [Citation.] "Such limitations are obstacles to just claims and the courts may not indulge in a strained construction to apply these statutes to the facts of a

particular case. . . ." [Citation.] Finally, there is a "strong public policy that litigation be disposed of on the merits wherever possible." ' " (*Nelson* v. *Flintkote Co., supra,* 172 Cal.App.3d at p. 734.)

It is not for us to determine whether the Legislature acted wisely in defining so narrowly the term "disability." We reiterate our observation in *Blakey* v. *Superior Court, supra,* 153 Cal.App.3d 101, that although the effects of this statute "may seem somewhat anomalous," that is the scheme the Legislature has enacted. Until and unless the Legislature sees fit to amend the statute, "it is the function of this court to apply the statute as written." (*Id.,* at p. 107, citation omitted.)

The judgment is reversed. Costs to appellant.

Peterson, J., and McCarty, J.,* concurred.

A petition for a rehearing was denied November 1, 1989, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 18, 1980. Lucas, C. J., Kaufman, J., and Kennard, J., were of the opinion that the petition should be granted.

---

* Assigned by the Chairperson of the Judicial Council.