[No. A042379. First Dist., Div. One. Feb. 15, 1990.]

JOSEPH URAM et al., Plaintiffs and Appellants, v.
ABEX CORPORATION et al., Defendants and Respondents.

COUNSEL

Alan R. Brayton, Eric Solomon, Brayton & Associates, Bryce C. Anderson and Martha Frances Bartkiewicz for Plaintiffs and Appellants.

James N. Penrod, John R. Wallace, Carol L. Solfanelli, Hassard, Bonnington, Rogers & Huber, Stephen M. Snyder, Kelly C. Wooster, Brobeck, Phleger & Harrison, B. E. Bergesen III, Eliot S. Jubelirer, Morgenstein & Jubelirer, Eugene Brown, Jr., Deborah A. Freeman, Hardin, Cook, Loper, Engel & Bergez, Gabriel A. Jackson, Robert E. Hayden and Jackson, Wallace & Hayden for Defendants and Respondents.

OPINION

STEIN, J.—Joseph Uram and his wife Virginia Uram claim, respectively, personal injuries and loss of consortium arising from Joseph's asbestos exposure. The trial court granted defendants' motion for summary judgment[1] on the ground that the action was barred by the applicable statute of limitations, which the court determined was Code of Civil Procedure section 340.2.[2] We affirm the judgment.

FACTS

Joseph Uram worked as a machinist at the Mare Island Naval Shipyard in Vallejo, California, from 1940 to 1959. For the last four years of his employment he suffered from shortness of breath and a persistent cough, and he eventually obtained a disability retirement in 1959, primarily for his lung problems as well as for his hearing impairment and dizziness. In a 1958 report, the civil service medical examiner diagnosed plaintiff's condition as bronchiectasis, deafness and hypertension.

Uram worked part time as a gardener between 1962 and 1965, his only employment following his disability retirement, earning a total of $1,045.25. Thereafter, Uram has remained unemployed.

---

[1] The motion was filed by the Asbestos Claims Facility defendants, a group of several of the dozens of defendants named in the action. Defendants Plant Insulation Company and Western MacArthur Company joined in the motion. For ease of reference, and because the specific identities are immaterial for purposes of our decision, we hereinafter refer to respondents as Asbestos Claims Facility or ACF and treat the motion as having been brought by all defendants.

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

In April of 1976, Uram underwent lung surgery for suspected mesothelioma and was informed that he had pulmonary fibrosis caused by asbestos exposure, apparently the first time Uram had been advised of his asbestos-related condition. Uram testified at deposition that the doctor had told him that "I couldn't go back to work again . . . and I could develop cancer . . . at any time." Thereafter, his pulmonary physician regularly examined him by monthly chest X-rays, a schedule that was gradually extended to annual X-rays.

On April 5, 1976, Uram filed a claim with the U.S. Department of Labor for workers' compensation dating back to his 1959 disability retirement. In 1976, Uram described his injury as "asbestos in the lungs" sustained between 1940-1959. To explain the delay in filing the claim, Uram added, "Asbestos was not suspected at the time of injury." In connection with that claim, Uram wrote in 1979 that he had been unemployed since 1966, and the "reason for termination of job is I am phisicaly [sic] unable to perform the work required. due to my Lung problem."

During the period 1980 through 1982, several doctors diagnosed certain types of heart problems, in addition to Uram's asbestos-related lung condition. A Dr. Golden determined that the shortness of breath Uram experienced at that time was more consistent with a cardiac condition than fibrosis of the lungs due to asbestos exposure. Dr. Golden showed Uram his X-ray revealing "the marked fibrosis throughout the lungs" and told him that he had "a serious lung problem" but that his heart condition was of greater concern. Two other physicians confirmed both asbestos-related pulmonary disease and aortic stenosis, and a third diagnosed myocardial ischemia. One doctor opined that noninvasive procedures could not determine whether Uram's current breathing difficulties were caused by either his pulmonary disease or his cardiac disease or a combination of both.

In January of 1982, Uram's attorney for his workers' compensation claim wrote to the Labor Department regarding Uram's various diagnoses. He noted that, despite the extensive medical treatment rendered to Uram over the previous six years, only recently had his heart problems been deemed serious. The attorney stated that attributing Uram's 1959 disability to his recent heart problems ignored his long-standing pulmonary condition, which Uram contended had caused his disability retirement in 1959 and justified compensation dating back to that time.

On May 5, 1982, Uram's federal workers' compensation claim was denied. While the chief of claims for the compensation program agreed that Uram had "sustained pulmonary injury consistent with exposure to

asbestos in the performance of duty for the United States," he concluded that there was "no evidence of disability."

The record contains no evidence of any further medical information received by Uram between May of 1982 and April 7, 1987, the date he and his wife Virginia filed their complaint.

## DISCUSSION

On appeal, the Urams contend that the evidence presented an issue of fact as to whether Uram had been disabled by asbestos exposure from performing his normal occupation, and that he did not have knowledge sufficient to trigger the statute of limitations. Virginia Uram contends that her claim is governed by the same statute of limitations as that of her husband. The Asbestos Claims Facility, of course, refutes both contentions, maintaining that the action is time-barred under both section 340.2, the statute applied by the trial court, and section 340, subdivision (3), which ACF contends is applicable in the instant situation to the claims of both plaintiffs.

■ As a preliminary matter, we observe the well-established rules governing our consideration of motions for summary judgment. The purpose of such a motion is to determine if there are any triable issues of material fact. The moving parties' papers are strictly construed, while those of the opposing party are liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) We are limited to the facts shown in the affidavits and those admitted and uncontested in the pleadings. (*Classen* v. *Weller* (1983) 145 Cal.App.3d 27, 42-43 [192 Cal.Rptr. 914].) The caution expressed in these general rules, however, should not be allowed to sap the summary judgment procedure of its effectiveness in cases which lack any actual triable issue of fact. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d. 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10].) The court must determine whether the triable issues apparently raised are real or merely the product of adept pleading. (*Sheffield* v. *Eli Lilly & Co.* (1983) 144 Cal.App.3d 583, 614 [192 Cal.Rptr. 870].) ■ Finally, while resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper. (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923].)

■ The trial court here determined that the Urams' actions were time-barred by section 340.2, which provides in pertinent part:

"(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following:

"(1) Within one year after the date the plaintiff first suffered disability.

"(2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure.

"(b) 'Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation."

We thus must look to the evidence to determine whether it gives rise to any triable issues of fact regarding three questions. First, was Uram disabled within the meaning of the statute? If so, was his disability caused or contributed to by his exposure to asbestos? Finally, did Uram know, or in the exercise of reasonable diligence should he have known the causes or contributing factors of his disability?

We must also determine which limitation statute applies to Virginia Uram's claim for loss of consortium and the effect of that statute.

I. *Uram's Disability*

The evidence appears to be without conflict regarding the first issue. Uram received a disability retirement in 1959 from the job he had held since 1940 because, in his own words, "I couldn't perform my duties so I was compelled to leave." Uram's subsequent work as a gardener lasted only three years, ending in 1965, and was apparently intermittent at best. Clearly, the health problems Uram suffered constituted a permanent preclusion from the performance of his regular occupation after 1959, and from any occupation after 1965. (*Puckett* v. *Johns-Manville Corp.* (1985) 169 Cal.App.3d 1010, 1017 [215 Cal.Rptr. 726].)

Uram's disability distinguishes his claim from that presented in the recent case of *Duty* v. *Abex Corp.* (1989) 214 Cal.App.3d 742 [263 Cal.Rptr. 13]. There, the elderly plaintiff had been exposed to asbestos during her employment from 1944 to 1945, and again from 1951 to 1953, at Hunters Point Naval Shipyard. Thereafter, she held a variety of housekeeping jobs, and she apparently took a simple longevity retirement from her last such job in 1968. It appears uncontested that she had not been disabled at that time, and that she first experienced severe asbestos-related illness in 1979. In plaintiff's action for asbestos exposure, filed in 1985, defendants were granted summary judgment on the basis of the statute of limitations. (*Id.* at pp.

745-746.) The appellate court reversed, holding that although section 340.2 applies to civil actions for asbestos exposure brought by retirees, the statute can *never* commence to run against those plaintiffs, as their longevity retirement does not meet the statutory definition of "disability."

Conceivably, and as Uram urges, the logic of *Duty* could also support a holding that section 340.2 could never run against a plaintiff who was disabled from his or her job for reasons unrelated to asbestos exposure. Such is not the case here, as Uram by his own admission took a disability retirement because of his "lung problems."

## II. *The Cause of Disability*

The Urams claim that ACF's evidence did not prove that the 1959 disability resulted from asbestos exposure, but they overstate the causation requirement. They argue that the statute never commences to run unless defendants bring forward conclusive diagnoses, rendered at the time of the disability, that asbestos exposure alone caused Uram to leave his job in 1959. The statute does not require either expressly or by implication that diagnosis and disability be contemporaneous. Indeed, such a rule would run counter to the well-recognized nature of asbestos-related diseases as having a lengthy delay in onset, a fact of primary importance to the authors of section 340.2. (See *Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101, 105 [200 Cal.Rptr. 52].) It is true that the 1958 medical reports did not diagnose an asbestos-related disease. Yet that examination revealed lung rales and pleural thickening, and later events and diagnoses make clear the connection between asbestos exposure and the lung problems Uram suffered continuously from the time of his disability.

■ Nor does the statute require that asbestos be the sole cause of disability. The statute speaks in terms of a disability "caused *or contributed to* by such exposure" or "as *a* result of such exposure." (Italics added.) ■ While Uram's doctors later debated the relative roles played by his heart problems and his asbestos exposure in causing his physical condition in the 1980's, all agreed that asbestos had affected his lung condition. Most telling, of course, are Uram's own admissions made while seeking workers' compensation benefits in 1976 when he claimed that asbestos exposure caused his 1959 disability retirement.[3]

---

[3] A troubling aspect of this case is Uram's insistence that summary judgment should be denied for want of a connection between asbestos exposure and his disability, when both his prior workers' compensation claim and this entire lawsuit arise from his contention that asbestos exposure caused his lung condition—the very condition which, as he has repeatedly asserted, prevented him from working.

■ A defendant moving for summary judgment may rely on the allegations contained in the plaintiff's complaint, which constitute judicial admissions. As such they are conclusive concessions of the truth of a matter and have the effect of removing it from the issues. (*Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 149 [60 Cal.Rptr. 377, 429 P.2d 889]; *Smith* v. *Walter E. Heller & Co.* (1978) 82 Cal.App.3d 259, 269 [147 Cal.Rptr. 1].)

■ While the complaint here does not allege that Uram's disability retirement in 1959 was due to asbestos exposure, it does allege that such exposure caused severe and permanent injury including breathing difficulties and lung damage. Uram's claims for workers' compensation dating back to 1959, when combined with his admissions in this action, provide powerful evidence, in addition to the medical opinions, that his disability was at least contributed to by asbestos. In the absence of countervailing evidence, section 340.2 does not require more to demonstrate causation.

The Urams rely on the denial of the workers' compensation claim to show that there had been no disability caused by exposure to asbestos. The board's letter characterizes the medical evidence as confirming that Uram had sustained an asbestos-related disease, but according to the standards used by the Department of Labor there was "no evidence of disability." That conclusion is negated by the evidence of disability previously considered herein. Moreover, " 'disability' as used in the context of section 340.2 was not intended by the Legislature to be construed in exactly the same way, for example, as it might be in workers' compensation law." (*Puckett* v. *Johns-Manville Corp., supra*, 169 Cal.App.3d at p. 1017.) Even indulging every reasonable inference in favor of the Urams, the letter of denial is at best irrelevant to the present action, and at worst its confirmation of asbestos-related disease tends to support the position of ACF.

III. *Uram's Knowledge of Disability*

■ The enactment of section 340.2 codified the common law "discovery rule" as part of the limitations period for claims arising from asbestos exposure. (*Blakey* v. *Superior Court, supra*, 153 Cal.App.3d at p. 106; see also *Velasquez* v. *Fibreboard Paper Products Corp.* (1979) 97 Cal.App.3d 881, 887-888 [159 Cal.Rptr. 113].) *Puckett* v. *Johns-Manville Corp., supra*, 169 Cal.App.3d 1010, suggests that the discovery rule as expressed in section 340.2 means that a plaintiff must have had a "real comprehension of what the potential threat might be to his health in the future." (*Id.* at p. 1017.) We believe that interpretation to be too narrowly drawn in view of the statute's express language that the time period may commence when the plaintiff "knew, *or through the exercise of reasonable diligence should have known*" of the cause of his disability (italics added). In any event, *Puckett*'s "real comprehension" requirement does not survive the more recent case of

*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d 1103, which addressed the same sort of inquiry notice provided for in section 340.2.

In *Jolly,* the plaintiff first learned in 1972 of her exposure in utero to the drug diethylstilbestrol (DES) and was told that DES daughters could suffer injuries. That same year, she was diagnosed as having a precancerous condition. At that time she was aware, or at least suspected, that her condition was a result of the DES exposure. In 1978, she underwent a complete hysterectomy in order to remove malignancy. At deposition, the plaintiff stated that as early as 1978 she was interested in obtaining more information about DES because she wanted to make a claim; she felt that DES was a defective product and that she should be compensated. She did not file her action until 1981, however. (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1107-1108, 1112.)

The Supreme Court concluded that the action was time-barred, and affirmed summary judgment for defendants. Because a plaintiff is under a duty to reasonably investigate, reasoned the court, the limitations period begins when the plaintiff suspects or should suspect that he or she has been wronged. The court stressed that it is the discovery of facts, not their legal significance, that starts the statute. (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1112-1114.) "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Id.* at p. 1111.)

The logic of *Jolly* is equally suited to the analysis of the delayed discovery element of section 340.2. Both *Jolly* and the statute address the situation of a plaintiff exposed to a toxic substance with long-delayed but potentially life-threatening effects. In both situations, the plaintiff may only slowly gather knowledge about his or her condition and its causes. Yet at some point, the plaintiff must be held to have sufficient knowledge or suspicion to satisfy the discovery rule, whether common law or in its codified form in section 340.2.

■ Applying the *Jolly* standard here, the record is replete with evidence that Uram actually knew and believed in 1976 that his disability was caused or at least contributed to by asbestos exposure. His lung problems were explained to him by his doctors as early as 1976. The plaintiff in *Jolly* wanted to make a claim for compensation well before she eventually filed suit; Uram here went further and actually filed a claim for compensation in 1976 based on his exposure. In the course of that claim, both Uram and his

attorney stated that his disability was caused by asbestos exposure. Uram expressly alleges that he was diagnosed with asbestos-related disease in 1976.

Uram's declaration did not expressly deny knowledge or suspicion of the nature of his disability. Uram instead argued that because he had a third-grade education, it was difficult for him to understand some of the medical terms used by his doctors over the years. However, both he and his attorney apparently understood his condition well enough to file a claim for compensation. He also stresses that his compensation claim was denied in 1982. However, the facts which led him to file that claim were not changed by the Labor Department's determination. Nor does the record reflect that after the denial of his claim Uram learned of any new facts regarding his condition that led him to bring his action in 1987. As in *Jolly*, it is his discovery of *facts*, not their legal significance to the Labor Department, that matters here. At the very least, Uram *should* have known of his asbestos-related disability long before he filed this lawsuit.

The evidence supports the result even under the "real comprehension" test. Uram stated at deposition that his doctor had told him in 1976 that he could no longer work and could develop cancer "at any time" as a result of his asbestos exposure. He stated that his condition was followed thereafter by regular chest X-rays. Uram had a ready understanding of the grimmest potential consequences of his exposure to asbestos in 1976.

In sum, Uram suffered a disability in 1959 as a result of his exposure to asbestos. By 1976, he knew, or through the exercise of reasonable diligence should have known, the cause of his disability. Because he did not file suit until 1987, his suit is time-barred by operation of section 340.2.

In view of our holding, it is unnecessary to consider respondent's contention that the correct limitations statute in this instance is section 340.2's predecessor, section 340, subdivision (3), the general personal injury statute. We note, without expressing approval, that the Second District has twice determined section 340.2 applies retroactively to any claim which had not actually been adjudicated before January 1, 1980, the date of the new statute (*Nelson* v. *Flintkote Co.* (1985) 172 Cal.App.3d 727, 732 [218 Cal.Rptr. 562]; *Puckett* v. *Johns-Manville Corp., supra*, 169 Cal.App.3d at pp. 1016-1017), apparently on the basis of a reference to "pending" actions in *Blakey* v. *Superior Court, supra*, 153 Cal.App.3d at page 106.[4] The evidence supports the result under either statute.

---

[4] In contrast to section 340.2, the earlier statute does not require evidence of disability or its connection to asbestos exposure, although the common law discovery rule delayed operation

IV. *The Loss of Consortium Claim*

■ Virginia Uram's action for the loss of her husband's consortium was also dismissed as untimely pursuant to section 340.2. The parties differ on which statute applies to her claim: respondent urges the application of section 340, subdivision (3), while appellant agrees with the trial court on the application of section 340.2, but of course contests the result.

Generally, the cases have applied section 340, subdivision (3) to loss of consortium claims. (E.g., *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408, fn. 30 [115 Cal.Rptr. 765, 525 P.2d 669]; *Priola v. Paulino* (1977) 72 Cal.App.3d 380, 383 [140 Cal.Rptr. 186].) To date, however, no case law has specifically determined the appropriate statute applicable to loss of consortium claims arising from asbestos-related injury.

■ Although the causes of action of husband and wife are normally joined (*Rodriguez v. Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 407), a loss of consortium claim is considered an independent injury to the spouse. (*Id.* at p. 405.) The loss of consortium injury is not "parasitic" upon the physically injured spouse's cause of action, nor is it an injury to the marital unit as a whole. (*Abellon v. Hartford Ins. Co.* (1985) 167 Cal.App.3d 21, 26 [212 Cal.Rptr. 852].)

■ With those principles in mind, we must consider whether this independent tort is subject to section 340.2—the special statute of limitation applicable to her husband's claim—or the more generalized terms of section 340, subdivision (3). We conclude that the one-year period of section 340, subdivision (3) applies, subject to the discovery rule. The Legislature could not have intended for subdivision (a) of section 340.2 to apply to loss of consortium cases arising from asbestos exposure, for several reasons. First, the "disability" element of accrual cannot be sensibly applied to a loss of consortium action. Second, even though subdivision (a) states that it applies to "any civil action" based on asbestos exposure, the similar claim of wrongful death based on asbestos exposure has a different limitations provision which omits the "disability" element.

As noted, subdivision (a) of section 340.2 commences to run on the later of two events: either when "the plaintiff first suffered disability," or when the "plaintiff" knew or should have known the cause of disability. The statute could never run against the spouse of an asbestos-exposed worker, because she never suffers disability within the meaning of the statute. We

---

of the statute until plaintiff received an informed diagnosis of his condition. (*Velasquez v. Fibreboard Paper Products Corp., supra,* 97 Cal.App.3d at pp. 885-889.)

are not unmindful that there exists under *Duty* v. *Abex, supra,* 214 Cal.App.3d 742, a class of plaintiffs against whom the statute never runs because they retired before suffering disability. Those plaintiffs, however, had been *personally* exposed to asbestos and thus *could* have become disabled within the meaning of the statute before retiring. The statute, as written, is in contrast completely nonsensical if applied to a plaintiff whose claim is based on the exposure of another to asbestos. The very nature of the tort of loss of consortium itself—rather than the particular facts of the case, as in *Duty* v. *Abex, supra*—precludes the commencement of the statutory period.

There is some parallel between an action for loss of consortium and an action for wrongful death. (*Priola* v. *Paulino, supra,* 72 Cal.App.3d at p. 387, fn. 5.) In each, the plaintiff's claim depends upon an injury to another. The Legislature has recognized that the "disability" accrual of subdivision (a) of section 340.2 cannot sensibly apply to an action for wrongful death based on asbestos exposure, and thus provided a different rule for such cases. Subdivision (c) of section 340.2 provides: "In an action for the wrongful death of any plaintiff's decedent, based upon exposure to asbestos, the time for commencement of an action shall be the later of the following:

"(1) Within one year from the date of the death of the plaintiff's decedent.

"(2) Within one year from the date the plaintiff first knew, or through the exercise of reasonable diligence should have known, that the death was caused or contributed to by such exposure."

The limitations period prescribed by the Legislature for wrongful death in subdivision (c) of section 340.2 is in essence the one-year period of section 340, subdivision (3), refined by the delayed discovery rule. Similarly, at the time of section 340.2's enactment, the cases applied section 340, subdivision (3) to a loss of consortium action, and recognized that accrual may be delayed by the hidden consequences of a tort. (*Priola* v. *Paulino, supra,* 72 Cal.App.3d at pp. 385-387. See Annot., 173 A.L.R. 750, 758-760 [loss of consortium as a delayed consequence of tortious conduct].) It is reasonable to assume that the Legislature did not enact a distinct rule for loss of consortium based on asbestos exposure precisely because the existing law adequately provided for such cases. ■ " 'It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them.' " *Estate of Banerjee* (1978) 21 Cal.3d 527, 537 [147 Cal.Rptr.

157, 580 P.2d 657], quoting *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200 [288 P.2d 12].)

 Turning to the facts here, Joseph Uram's disability retirement in 1959 commenced the loss of services which constituted the injury to his wife Virginia. When her consortium was to some extent reduced, a cause of action arose. (*Priola* v. *Paulino, supra*, 72 Cal.App.3d at pp. 390-391.) However, the accrual of her cause of action was delayed pursuant to the discovery rule until she was aware of her injury and its negligent cause. (*Jolly* v. *Eli Lilly & Co., supra*, 44 Cal.3d at p. 1109.) The evidence which supports the conclusion that in 1976 Joseph knew or should have known that asbestos exposure contributed to his disability, equally supports an identical conclusion with regard to Virginia. The only reasonable inference that can be drawn from her husband's diagnosis of asbestos-related fibrosis and his subsequent workers' compensation claim is that Virginia at least should have suspected that the loss of Joseph's services was due to his exposure to asbestos during his working years. No evidence of a different time of discovery by Virginia appears in the record, and her action is thus also time-barred.

CONCLUSION

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied March 19, 1990.